Counsel, can you hear us? Yes, Your Honor. All right, Counsel for Appellant, please proceed. Thank you, Your Honors, and good morning. May it please the Court, Connor Hayes, on behalf of the plaintiff's appellant, Ashley Popa. With the Court's permission, I would like to reserve two minutes of my time for rebuttal. All right. This appeal asks the Court to decide a straightforward question. Does the wiretapping of someone's communications implicate a mere procedural right or a substantive right sufficient to confer standing? Well, Counsel, I think you've included in there something that we really need to sort out, wiretapping. Was there wiretapping in this case? Yes, there was, Your Honor. The allegation in this case is that PSP procured Microsoft to supply code to put on its website that would, while website visitors were browsing the PetSuppliesPlus website, intercept, wiretap their communications with PSP and, you know, record and compile a record of their entire visit to the website such that if they wanted to, they could replay essentially a video of the entire user's visit to the website. And that's the wiretap. So let me, why is that confidential information? So if someone went into a store and to purchase dog supplies, as here, and the store owner had hired some outside person to watch each customer, see which of the packages they went to, which ones that they looked at most carefully, which caught their eye, and recorded all that so that the owner of the store could then adjust to what supplies they would offer in the future or what they might suggest verbally to the customer, would any of that be actionable? I think that there's a fundamental distinction here, Your Honor, between analogizing this to browsing in a retail store like you just described and the type of communications that may be more private. So I think a more appropriate analogy to what was going on here would be, let's say, you know, I don't think many people shop by calling in to a retail company anymore, but let's say that PSP has a hotline that you can call in to order pet supplies. And they have someone who has wiretapped that line so that a third party can listen to your communications, you know, with PSP when you call in on a phone line. I think that's pretty clearly a wiretap and invades into a space that someone may believe is more private. Similarly, I think to take it a little further, you know, this is analogous to someone sitting at home on their living room couch browsing the catalog, and somehow someone has inserted a camera that can watch them browse that catalog to determine what they're looking at, what they're interested in, what they want to buy. I think, you know, under common law tort law, that type of intrusion into someone's home, even if it's capturing what some might consider benign information, you know, browsing for products, there's still an intrusion into their privacy, you know, that goes far beyond what, you know, might be contemplated by just browsing in a retail store. Can I just move slightly to one side on this? TransUnion seems to be pretty clear that you can't get into federal court based on a statutory violation alone you've got in this situation. You've got to establish a concrete injury, and in this case, there has to be a close historical or common law and an analog linked to the plaintiff's asserted injury. What is the asserted common law tort that you're relying upon here? I think the closest tort, Your Honor, is intrusion upon seclusion, but I think that the tort can be defined more broadly as invasion of privacy. I think that something that seems to get mixed up in some analysis of the test put forth in Spokio and then expanded upon in TransUnion is this notion that there needs to be, you know, any sort of close duplicate in terms of a claim. You know, in TransUnion, the Supreme Court explicitly said we don't need to look for an exact duplicate. We need to look at whether there's an interest or harm that was actionable in common law. And when you look at this court's precedence in analyzing these types of privacy actions, you know, the harm that the court has identified and tries to look back in time and see what was actionable in common law is defined quite broadly. So in this court's decision in Campbell v. Facebook, the interest at stake was defined as protecting privacy and communications. In this court's decision in Eichenberger v. ESPN, it was described as protecting the right to control one's information. And in this court's decision post-TransUnion in Telford v. Experian three years ago, the interest of protecting consumer privacy was considered, you know, akin to privacy interests that were at stake at common law. So I think the closest tort is intrusion upon seclusion here, and that's why we also allege a claim for intrusion upon seclusion. But I think that the close relationship test that the Supreme Court asks courts to conduct doesn't need to be that precise. In your view, obviously, each of these analogous torts has elements, stated in the restatement or wherever. Is it your view that as long as a number of the elements, but not necessarily all of the elements of an analogous tort are applied, that's enough as long as you can show some concrete injury? Is that sufficient under TransUnion? That's correct, Your Honor. And I think that TransUnion's analysis itself demonstrates why that's so. I think in TransUnion they were comparing the FCRA provision back to the tort of defamation, for example. And in analyzing that, they were focused on what they essentially considered to be the central element of a defamation claim, which was publication. And that's where we get this split in TransUnion between the group of plaintiffs who had standing, who had their information in their file published to third parties, and the people who did not have their information published, who did not have standing. The Supreme Court did not go through element by element exactly what a defamation claim is. They looked at what's the central harm and what's the central element of that defamation claim. So on intrusion upon seclusion in this case, what is the injury that you're alleging that your client suffered? The injury is the invasion into her private realm, essentially. And from your perspective, that's enough? That is enough, Your Honor. So if I may, this court has already walked through this analysis and decided that these types of wiretapping harms that are present in this case are codifying substantive privacy rights that were actionable at common law. And a violation of those wiretapping statutes is sufficient to confer Article III standing because a violation of those wiretapping laws is inevitably going to implicate these concrete interests in privacy. What's your best argument that what happened here is wiretapping and meets that statute or those statutes? The best argument we have, Your Honor, is that there was a, you know, these wiretapping statutes discuss the interception of communications. That is fundamentally what wiretapping statutes are about. And what we're alleging here is that Microsoft, with PSP's permission, intercepted the plaintiff's communications with the PetSuppliesPlus website. And those communications entailed browsing the site, browsing for products, clicking with her mouse. Again, I don't remember seeing this in the record, but I've been involved with a number of cases where there were allegedly disclosures made by Google or whomever saying, you know, if you're on our system, we have the right to use this information in such and such a way. I gather that in this case, there's no claim by any of the parties involved that the actions that were taken here that you call wiretapping were authorized or consented to by your clients. Is that correct? That's correct, Your Honor. I would preliminarily note that I think that whether there was any consent or authorization in this way does not necessarily implicate Article 3 standing, but goes more to, you know, the actual merits. Right, I get that. I'm getting back into whether this is wiretapping to some degree. Because like Judge Rollins said, I'm struggling with, obviously, the initial statute didn't contemplate anything like what we currently have in the modern world. And in a way, it's kind of hard to stretch them to get here. What is your best argument? What's your best case or cases that what happened here truly falls within the purview of the wiretapping statutes? I think the best case on this, Your Honor, would be this court's decision in Campbell v. Facebook, I think about five years ago in 2020. In that case, a panel of this court went through a pretty in-depth analysis in looking at what are these wiretapping claims about? What are they protecting against? Are they related to a historic or closely related to a, you know, historically cognizable cause of action or common law? And in that case, they pointed to intrusion upon seclusion. And they walked through how wiretapping, as we conceive of it now, you know, may have been cognizable, you know, to give rise to a claim for intrusion upon seclusion. And explicitly, the opinion in that case explicitly stated that these types of wiretapping statutes are the modernization of the common law tort, invasion of privacy torts, like intrusion upon seclusion. And I think it's also important to recognize, too, that this gets into some of the Supreme Court's discussion of what it means for a legislature to elevate a harm that was long actionable at common law as well. You know, the Congress, when it passed the Federal Wiretap Act and other federal acts that implicate wiretapping, and state legislatures like California and SEPA, Pennsylvania with Wesca here, were taking something that was actionable at common law and probably could have just been a claim for intrusion upon seclusion, but wanted to codify and protect that violation of wiretapping. And that wiretapping, as it's defined, does pretty plainly apply to Internet communications as well. Your Honors, I think that the clearest articulation of where the case law stands on this is this court's recent decision in Jones v. Ford Motor Company, which was decided after TransUnion. And as set forth in our briefs, I think that this framework and this analysis has been consistent since Spokio. I don't think TransUnion set a lot of new ground beyond Spokio. And this court has gotten it right repeatedly in Eichenberger v. ESPN, in Campbell v. Facebook, Niab v. Capital One, in re-Facebook Internet tracking, and how to think about these questions of standing in the context of wiretapping and consumer privacy. But in Jones v. Ford Motor Company, after TransUnion, this court reaffirmed that when a plaintiff is bringing a claim under these types of wiretapping statutes, even for innovative new technologies, in that case, the issue was a car's computer being able to download individuals' communications into its system. That itself is a violation of a concrete privacy interest, such that plaintiffs have a concrete injury and have article 3 standing. If the court has no further questions, I'll reserve the rest of my time for rebuttal. All right. Thank you, counsel. Mr. Wolfe? Good morning, Your Honors. Can you hear me all right? Yes. Okay. Eric Wolfe for Microsoft. Your Honors, I think there's been a lot of discussion of analogies and everything, but it's really important to get down to exactly what was pleaded in terms of, you know, what is the communication, what's the injury. It's very skimpy. It's at paragraph 66. I'll read the whole thing. It's short. During these visits, we're talking about visits to the PetSuppliesPlus.com and its subpages, plaintiff browsed for pet supplies. Plaintiff communicated with the website by using her mouse to hover and click on certain products. That's not a phone call. That's not, say, in Campbell and in Jones text messages. That is basically visiting a website. That's it. I think the vast majority of courts, and we sent you a 28-J letter with the Eighth Circuit decision, have come up with what is a very easy analogy here. Some of these cases are complicated and have lots of jargon. I think this one's pretty easy, and there's an easy analogy, which Judge Rakoff has already suggested, which is this is shopping for pet supplies. It's exactly what you think it is. And when you go shopping for pet supplies, people in the store know that you're in the store. And I would say, like, when we go shopping, we're not surprised, you know, that there might be some other folks there. You know, maybe there are security cameras. Maybe there are vendors coming and going. It's not surprising that when you shop at a website that it's possible that the folks who help with the website and make it run effectively might have some of that data. Now, what exactly was known here? Well, the complaint actually does not say that anything at all was learned about the plaintiff other than that it was learned that there were mouse – by using her mouse to hover and click on certain products. But it's not even her because it's anonymized. This whole encounter is essentially anonymous. There are various allegations about what the Clarity product can and can't do. But even in the complaint itself, it shows that if something like an address is put in, it gets masked so you don't see the street numbers. So this is not very much activity. It's not communications like texts and things like that. And it's not even particular to her. So this is the skimpiest of claims of injury. The analogy to intrusion upon seclusion, I did not hear, unless I missed it, any discussion of the elements. I heard discussion of, can we please skip some elements? But the elements are invading a reasonable expectation of privacy. And then it's got to be something highly offensive. And on the reasonable expectation of privacy, again, I think the courts have looked at this like shopping. It is perfectly reasonable to think that the people running the website know that somebody has visited the website. I think it's perfectly reasonable to think that somebody helping them with the website so that it runs effectively, so that people don't get stuck on it, you know, data analytics is what they would call it, that that might happen as well. The analogy of this is like somebody coming to your home and standing behind you while you surf the Internet. Of course it's not. I mean, we could all go home tonight and shop online, and it is not like having a stranger in our home watching us surf the Internet. So those analogies break down. The store analogy is the one that makes sense. It's the one that most courts have accepted. It's the one that needs to be accepted. On the wiretapping, the Pennsylvania statute was passed in 1978. It was amended in 1988. So this is all before we were ever shopping online. The 88 Amendment would capture email. But the way these wiretapping statutes work, it's interesting that he talked about, you know, you can watch a video of what happened on the site. Raw video never violates a wiretapping statute because you're not eavesdropping. You don't hear it. So even that analogy wouldn't fall within wiretapping. We rely heavily on the decision in Cook v. GameStop, which is by a Pennsylvania federal court, which looks at the sorts of things that were alleged here and says this is not communication. You might have some things that might be record information that never counts, but it's not communication. And we discussed that in a brief. It's also not a device. I think the last thing I'll say, and they're really relying heavily on the statute. When getting questions about elements, it kind of always funnels back to this is a wiretapped statute, and historically wiretapped statutes protect invasion of privacy. This court has pre-transunion cases that kind of rely heavily on like, well, this is a privacy statute. I think Jones, and actually I was counsel for Toyota in the Jones case, the way the Jones case came out where defendants did not argue standing, it was actually the plaintiffs wanted to say that they didn't have standing so they could go back to state court. But in Jones, the way this court dealt with it was it acknowledged that, you know, there are these privacy statutes. But then it had a big paragraph about the allegations, what was alleged. And it was alleged that text messages were intercepted. So whether there are some statutes that sort of the statute alone is so targeted and so within like some traditional privacy field, whether those statutes can be enough after transunion, I think that's an interesting question. People will probably write law review articles about it. But you still have to do the second part. You have to look at the allegations. And that's what Jones did. If you look at it here, it's just paragraph 66. It's very skimpy, and it's not enough. If the court doesn't have any further questions, I'll rest on the briefs. All right. Thank you, counsel. Any questions? No. All right. Rebuttal. Thank you, Your Honors. I just want to address a few brief points. First, Judge Smith, to get back to your question about this being wiretapping, I did want to mention as well that one of the important allegations here is that Microsoft, the third party, not the website the plaintiff was visiting, a third party she didn't know about, was instantaneously able to view what she was doing. And I think, you know, in wiretapping, there is this concept of being able to instantaneously listen to someone's phone conversation, watch what they're doing, and that's exactly what we are. Counsel, do you have any case you could point us to that involves the facts of this case where the court has found that a wiretapping statute has been violated? Your Honor, I would point to a Western District of Pennsylvania case, Harry Carter Gifts. I can provide this to the court as supplemental authority. I believe it's already in our briefs. A district court case, is that correct? It's a district court case, Your Honor, that ultimately ended up on appeal of Third Circuit where they affirmed a finding that the plaintiff had pled a violation of WESCA based on a similar type of interception scheme, not precisely session replay code, but a very similar type of scheme and found that the actions of the defendants in that case, similarly, though, a website and a third party who was able to collect information from website visitors were wiretapping in violation of WESCA when they collected users. That district court case, is that the only one that you can refer us to at this point? It's the only one off the top of my head, Your Honor, but I'm happy to provide supplemental briefing if that would be helpful. If you have one, I'd like to have a 28-J letter, but I don't know whether my colleagues care on it. I'm always interested in what a district court has to say. Understood, Judge Rakoff. The one additional point I would like to mention is I know that my friend on the other side mentioned that there's been no discussion of how highly offensive this information is in that element of the tort of intrusion upon seclusion, but in these sorts of cases that this court has analyzed, this court has frequently noted that invasion of privacy torts generally, the offensiveness is the intrusion itself. The offensiveness does not have to arise from the information captured. The offensiveness can arise from the context in which it occurred. This court in both Eichenberger and in Campbell noted that many common law torts did not require there to be offensive things collected so long as there was, you know, a maybe egregious invasion of privacy via the context. That's what I was trying to get at with the analogies of the, you know, browsing over your shoulder at home or wiretapping into your phone call into an ordering line, because there can be something offensive about that. There can be something offensive about trespassing into someone's property, even if there's no maybe resulting additional harm or injury or they conduct offensive things while doing so or collect offensive information. I see my time has gone over. So if the court has no further questions, I rest on my briefs and ask that you reverse the district court below. It appears not. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court that completes our calendar for the day and for the week. We are adjourned. This court for this session stands adjourned.
judges: RAWLINSON, SMITH, Rakoff